CHARLES G. MUELLER v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Negligence—Injury to brakeman—Variance.*

The declaration in a personal injury case averred that the plaintiff, a freight brakeman, attempted to make a coupling of a car that had been kicked upon an unballasted siding; that he was ignorant of the condition of the siding, and could not see it, it being a dark and cloudy night; that plaintiff took two or three steps along on the ties, and while in the act of coupling said kicked-off car to another car, he being at the time between the two cars, he stepped with the train between the rails, and, instead of stepping upon the earth or a tie, as he expected, stepped between a couple of ties, and was tipped over, his feet falling unexpectedly over a foot, causing him to lose his balance, his control over his equilibrium and his body and limbs, and his right arm was caught between the two deadwoods of said car, and crushed. The testimony of the plaintiff showed that the cause of the injury was his act in placing his arm between the deadwoods, where it could be and was caught when the moving car came back against the stationary car; that

the movement by which his arm was so placed was not involuntary; that he was not thrown and did not stumble into this position; that he stood with his arm against the stationary car, in a position at that time discovered by him, and waited for the moving car to come against it, and the instant it did so his arm was caught. And it is held that plaintiff's own testimony fails to show either that he was in the exercise of due care, or that the unballasted condition of the track caused the injury in the manner complained of.

Error to Wayne. (Frazer, J.) Argued April 3, 1895. Decided May 28, 1895.

Negligence case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*Wells, Angell, Boynton & McMillan*, for appellant.

*James H. Pound*, for plaintiff.

MONTGOMERY, J. Plaintiff was employed as a brakeman on defendant's freight train, and, while engaged in making a coupling on a side track at a station called "Warner," received injuries. He sued to recover damages, and recovered on the trial. Defendant brings error.

The negligence imputed to defendant is a failure to ballast its track, and the manner in which plaintiff claimed in his declaration to have received his injury is described in the pleading as follows:

"Plaintiff, complying with his duty in that regard, attempted to make a coupling of said car kicked upon the said unballasted siding or side track of defendant, of which fact of lack of ballast plaintiff avers he knew nothing, and could not see, it being a dark, cloudy night. That he (plaintiff) took two or three steps along on the ties, and, while plaintiff was in the act of coupling said kicked-off car to another car, he (plaintiff) being himself between the two cars, he stepped with the train, being between the rails, and instead of stepping upon the earth or a tie, as expected,

plaintiff avers he stepped between a couple of ties, and was tipped over, his feet falling unexpectedly a great distance, to wit, over a foot, causing plaintiff to lose his balance, his control over his equilibrium and his body and limbs; and plaintiff avers his right arm was caught between the two deadwoods of said car, and crushed."

Defendant's counsel contend that the proof offered by plaintiff fails to show that the alleged want of ballast was the cause of plaintiff's injury. The only witness who testified upon the subject was the plaintiff himself, and upon this question his testimony was as follows:

"The conductor was doing the switching, and I was coupling up with the other brakeman, and he was throwing the switch. He kicked a couple of cars down this siding, and they stopped all right, came up against the other cars, and I coupled some on the main line. Then he went and kicked up another on this siding, and I went up to make the coupling, and there was a pile of gravel alongside of the track, and it was raining, and washed some of the gravel right where I stood. I got to the car, and put in the pin, but the other car did not strike it so hard as to couple the pin. The engine went back again. When I got back on this track again to drop this pin, I had to get in there. The pin was pretty high up. I could not reach it very well. I had to get close to it. The cars were slacked apart after they got through shoving. I was looking for this pin in the dark, and my arm got in between the deadwoods, and I dropped in between the ties, and the engine came in a second time while my arm was between the deadwoods."

"At the time I was hurt, my back was towards the engine. I had my hand on the standing car. When I stepped across the west rail, I first set the pin. I set the pin in the socket. I mean slanting, so that, when the car comes against it, it will drop the pin. That was on the south end of the standing car. I used the right hand to set that pin. Then, as the moving car came up, I lifted the link in that car to get it into the other car. I took that with the right hand. The cars did not couple the first time. The pin didn't come down. It did not strike hard enough. Then the moving car bounded back a little, not over an inch; so that the link did not come out of the drawbar. It was in the draw all the time. I

then got my right arm over the deadwoods to reach the pin to drop it. I drew it from underneath, and put it on top, to shove the pin down. As I was doing that, I was standing still. As I put my arm down to make the pin go down in the hole, the deadwood caught my elbow. I got my arm in between there, when the engine came back onto the cars again.

"*Q.* Did the car come back again after you had raised your arm up to get the pin to go down?

"*A.* I did not reach the pin.

"*Q.* Was it while your arm was coming up that the deadwood caught you?

"*A.* It was while I was feeling around for the pin. I could not reach it.

"*Q.* While you were doing that, the car came back again?

"*A.* Yes, sir.

"*Q.* The engine and the car?

"*A.* Yes, sir.

"*Q.* And then it caught your arm?

"*A.* Yes, sir.

"I had a lantern that night. It was in good shape, clean. I did not use a stick in making the coupling.

"*Q.* Did you walk along over the ties, holding the link up, or let the moving car come towards you?

"*A.* I stood there, and let the moving car come towards me. I did not walk along over the ties holding the link out.

"*Q.* When you stepped in, did you look at the track to see whether the ties were as you described them, or ballasted?

"*A.* No, sir; I did not have time. The car was too close onto me.

"*Q.* So you jumped right in without looking at your footing at all, and picked up that pin, and then turned around, and got the link with your right hand, without even looking at your footing at all?

"*A.* No, sir; I did not have time to look, because I wanted to make the coupling.

"*Q.* Without looking at all where you were stepping, you stepped in, because the car that was coming was so close to you that you thought you had not time to examine?

"*A.* Yes, sir.

"*Q.* How far did you step along on the track after you got in?

"*A.* I did not step at all just then.

"*Q.* At any time?

"*A.* I made one or two steps afterwards."

We think this testimony not only fails to show that the injury occurred in the manner described in the declaration, but that it does show that the cause of the injury was the act of plaintiff in placing his arm between the deadwoods, where it could be and was caught when the moving car came back against the stationary car. The movement by which his arm was so placed was not involuntary. He was not thrown and did not stumble into this position. He stood with his right arm against the stationary car, in a position certainly at that time discovered by him, and waited for the moving car to come against it, and the instant it did so his arm was caught. The want of ballast cannot be said to have made it necessary for him to place his arm in this position. He knew the relative position of the pin, drawbar, and deadwood; and after discovering this position, and after discovering the difficulty in placing the pin, it is apparent that he assumed the risk of the injury which followed. If it be urged that the want of ballast made it more difficult to reach the pin and drawbar, it should be borne in mind that the difficulty was apparent to the plaintiff; and, with knowledge of the difficulty, it was clearly negligent for him to put his arm between the deadwoods. The plaintiff's own testimony fails to show either that he was in the exercise of due care, or that the unballasted condition of the track caused the injury in the manner complained of.

The judgment will be reversed, and, as no case was made out by the plaintiff's own testimony, no new trial will be ordered.

GRANT and HOOKER, JJ., concurred with MONTGOMERY, J.

McGRATH, C. J. I concur in a reversal, on the ground

that the injury was not received in the manner alleged in the declaration.

LONG, J., did not sit.